

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**
**Apr 13, 2026**
**11:45 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

| | |
|---|---|
| Billy Brown | Docket No.      2023-02-8932 |
| v. | State File No.    2355-2024 |
| The Lilly Co. d/b/a Lilly Environmental, et al. | |
| Appeal from the Court of Workers' Compensation Claims Brian K. Addington, Judge | |

---

### Affirmed and Remanded

---

The employee in this interlocutory appeal sustained a compensable low back injury. After a period of authorized medical care, the relationship between the employee and his authorized physician deteriorated. The employee requested a new panel of orthopedic physicians and a panel of neurosurgeons pursuant to a purported referral from the treating physician. The authorized physician then declined to see the employee again. Following an expedited hearing, the trial court ordered the employer to provide a new panel of orthopedic specialists for selection of a new treating physician, but it declined to order a panel of neurosurgeons, finding that no referral was made. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

A. Allen Grant and Scott A. Morrell, Nashville, Tennessee, for the employer-appellant, The Lilly Co. d/b/a Lilly Environmental

Timothy A. Roberto, Knoxville, Tennessee, for the employee-appellee, Billy Brown

### Memorandum Opinion[1]

On November 17, 2023, Billy Brown ("Employee") was driving a forklift within the course and scope of his employment for The Lilly Co. d/b/a Lilly Environmental

---

[1] This decision is being filed pursuant to Tenn. Comp. R. and Regs. 0800-02-22-.03(1) (2023).

("Employer"), when the forklift struck an unpainted metal support beam. Employee reported the incident, and a company manager came to the scene to investigate the damage. When Employee was sent for a drug test, he purportedly showed the nurse the left side of his back, which was red and swollen following the incident. However, he told Angie Carr, a supervisor, that he "was fine" but may be "stoved up." Employee was apparently terminated following the incident.

On November 22, Employee told Ms. Carr that he was seeing his primary care physician due to soreness and numbness from the accident. According to a November 22 report issued by Dr. Rania Al Asmar, Employee complained of right lower back and hip pain that radiated down his right leg. Dr. Al Asmar ordered an "urgent MRI" of the lumbar spine due to suspected "intervertebral disc prolapse with impingement." By November 29, Employee complained of worsening symptoms that "left me nearly unable to walk or move around freely." He allegedly called both Ms. Carr and the company's safety manager to report that his doctor had ordered an MRI for early December.

The December 4 MRI report indicated Employee had "[m]ultilevel degenerative changes" in the lumbar spine "superimposed on epidural lipomatosis." According to the radiologist's assessment, Employee had a "broad-based disc bulge" at every level of the lumbar spine. Upon review of the MRI findings, Dr. Al Asmar prescribed pain medication and referred Employee to a neurosurgeon.

After several visits to a walk-in clinic, Employee eventually received authorized care with an orthopedic specialist, Dr. Richard Duncan. In his March 9, 2024 report, Dr. Duncan noted Employee's history of having struck a metal pole while driving a forklift. Employee complained of left-sided low back pain with radiating numbness and tingling into the left foot and reported undergoing three weeks of physical therapy that had helped "a little." Following his physical examination, Dr. Duncan diagnosed lumbar radicular pain and thoracic spine pain. He prescribed medications and an injection.

In his March 12 report, Dr. Duncan noted that he had reviewed office notes from the walk-in clinic as well as the prior x-ray and MRI reports. He commented that Employee's scans showed "degenerative changes normal for age" and that he saw no evidence of a disc herniation. However, Dr. Duncan did see evidence of "L4 nerve root compression" that was likely a "result of his injury based on his history." Dr. Duncan recommended a "L4 selective nerve root injection" and asked that Employee return in five to six weeks for reevaluation.

Dr. Duncan continued to offer conservative care over the next several months, including injections, medications, physical therapy, and home exercise. He noted improvement in Employee's symptoms, and, on June 11, 2024, he placed Employee at maximum medical improvement ("MMI") with a 3% impairment rating. He did not restrict Employee's physical activities.

Employee returned to Dr. Duncan several more times. He received epidural steroid injections in January and March 2025, which he reported improved his symptoms. Dr. Duncan did not alter his opinions regarding MMI or permanent impairment.[2] However, in his April 16, 2025 report, Dr. Duncan suggested the possibility of a repeat MRI, but then stated, "[W]orkers' compensation does not want to do that." He then commented that if Employee "wants to ask [him] further questions then he can go somewhere else if [he] is not happy with my opinions or my impairment rating." He also noted that Employee "may want to speak with a neurosurgeon." Finally, Dr. Duncan stated, "I do not have anything else I can do from a medication or injection standpoint to help him."

Following the April 2025 visit with Dr. Duncan, Employee asked the trial court to compel Employer to provide a panel of orthopedic specialists for selection of a new treating physician, and a panel of neurosurgeons in response to Dr. Duncan's purported referral. Employer opposed the requests, arguing that it had provided all appropriate treatment to date and that Dr. Duncan had not expressed an unwillingness to see Employee again. It further argued that Dr. Duncan's comment in his final report did not amount to a "referral." Thereafter, Employer acknowledged in a supplemental brief that Dr. Duncan had, in fact, declined to see Employee again as a patient. However, it maintained that any need for additional medical treatment was not causally related to the work accident, citing Dr. Duncan's September 12, 2025 response to a medical questionnaire in support of its position.

Following the expedited hearing, the trial court concluded that Employee remained entitled to reasonable and necessary medical treatment causally related to the work accident. Citing our opinion in *Limberakis v. Pro-Tech Sec., Inc.*, No. 2016-08-1288, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *9-10 (Tenn. Workers' Comp. App. Bd. Sept. 12, 2017), the trial court ordered Employer to provide a panel of orthopedic specialists for selection of a new treating physician. However, it declined to order a panel of neurosurgeons, concluding that Dr. Duncan's statements did not constitute a referral for treatment. Employer has appealed.

It is a fundamental tenet of Tennessee workers' compensation law that an employee is entitled to medical treatment "made reasonably necessary" by a work-related accident. Tenn. Code Ann. § 50-6-204(a)(1)(A). Moreover, as we concluded in *Limberakis*, "unless a court terminates an employee's entitlement to medical benefits, or approves a settlement in which the parties reach a compromise on the issue of future medical benefits, an injured worker remains entitled to reasonable and necessary medical treatment causally related to the work injury." *Limberakis*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *7. In other words, an employer cannot unilaterally terminate an employee's right to future medical

---

[2] During the course of his low back treatment, Employee was also evaluated for right knee symptoms and eventually underwent a total knee replacement. That course of treatment is not pertinent to the present appeal.

benefits. *Id.* at *6. Despite Employer's effort to distinguish *Limberakis*, we conclude the rationale expressed in that case applies with equal measure here.

In *Limberakis*, after the treating physician declined to see the employee again, the employer sent the physician a letter, and the doctor replied that he did not believe the employee "will require further medical treatment as it directly relates to his work-related injury." *Id.* at *3. Nevertheless, we concluded the employee remained entitled to medical benefits as provided in subsection 204(a)(1)(A) unless and until those benefits were terminated by court order. *Id.* at *10. Here, after Dr. Duncan declined to see Employee again as a patient, Employer sent Dr. Duncan a medical questionnaire asking whether Employee needs "any further medical treatment for [Employee's] lumbar spine that is primarily related . . . to the work incident." Dr. Duncan checked the "NO" line but offered no further comment or explanation. In addition, at the time Dr. Duncan responded to Employer's questionnaire in September 2025, he had not seen Employee as a patient in almost five months. Under these circumstances, the trial court gave little weight to Dr. Duncan's response and ordered Employer to provide a new panel for selection of a treating physician. We agree the preponderance of the evidence supports that order. It will be up to the selected physician to determine whether Employee needs additional medical treatment "made reasonably necessary by accident." Tenn. Code Ann. § 50-6-204(a)(1)(A).

For the foregoing reasons, we affirm the decision of the trial court and remand the case. Costs on appeal are taxed to Employer.

4